**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERESA KOTWICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 07 C 5262 |
| | ) Judge Joan H. Lefkow |
| ROSE PACKING COMPANY, INC. | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Teresa Kotwica ("Kotwica"), filed suit against defendant, Rose Packing Company ("Rose Packing"), alleging discrimination, specifically failure to accommodate, in violation of the Americans with Disabilities Act of 1990 ("ADA"), as codified at 42 U.S.C. § 12101 *et seq.* (2006).[1] Pending before the court are the parties' cross-motions for summary judgment. For the following reasons, Kotwica's motion for summary judgment [#27] is denied and Rose Packing's motion for summary judgment [#21] is granted.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] The ADA was significantly amended, effective January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). As Congress did not express its intent that these amendments be retroactive, the law in place prior to these amendments applies to this case. *See Fredricksen* v. *United Parcel Serv., Co.*, No. 08-2060, 2009 WL 2925451, at *4 n.1 (7th Cir. Sept. 8, 2009).

56(c).  To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  *Id*.  While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment.  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact.  *Id*. at 323.  In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial.  *Id*. at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

## BACKGROUND

Rose Packing is an Illinois corporation and operates a meat packing facility on Chicago's South Side that employs over 500 people.  It meets the ADA's definition of an "employer." 42 U.S.C. § 12111(5).  Rose Packing employs production and maintenance employees (known as "general laborers") in multiple departments, including boning, processing, packing, slicing, and cooking.  All general laborers are members of the United Food and Commercial Workers International Union, Local 1546 ("Union").  General laborers in each department are required to rotate through different positions within and across departments.  This rotation requirement is mandated by the collective bargaining agreement between Rose Packing and the Union and is intended to avoid repetitive injuries and address fluctuations in workload.

Kotwica worked at Rose Packing from March 28, 1996 to June 8, 1999, and again from July 10, 2000 to March 13, 2006. During this time, Kotwica worked primarily as a general laborer in the packing department, the cooking room, the slicing room, and the boning room. She also spent some time performing clerical work for the SBC department and the production support office and translated on the company's behalf between Polish and English.

During Kotwica's employment with Rose Packing, the company had in place a return to work policy that required employees returning from leave for a personal medical condition to have no medical restrictions. Employees with work-related medical conditions were allowed to return to work with restrictions if they could be accommodated. Otherwise, they remained at home until the restrictions were lifted or could be accommodated.[2] Any employee who had been out for more than fourteen days had to receive clearance from the company physician before being allowed to return to work. To satisfactorily complete this examination, a general laborer was required to lift at least fifty pounds.

In January 2005, while Kotwica was working in the production support office, she took approved leave from work to receive injections to her hip. Her hip problems were considered a personal, not a work-related, medical condition. Kotwica's physician originally placed certain restrictions on her return to work (no lifting over fifteen pounds, no kneeling, no squatting, and five minutes of sitting every hour). Rose Packing's nurse, Linda Madlener ("Madlener"), notified Kotwica that she could not return to work with the restrictions her doctor had imposed per company policy. Despite this, Kotwica returned to work at the direction of Pete Rose, Rose

---

[2] Rose Packing's return to work policy was changed after Kotwica's dismissal. The policy currently does not differentiate between personal and work-related medical conditions and the company seeks to accommodate the restrictions employees have in either case.

3

Packing's vice president, and Al White, chief Union steward. Only several days later did Kotwica's doctor provide a note releasing Kotwica to work with no restrictions, thus belatedly complying with company policy.

In July 2005, Kotwica was transferred from the production support office to the boning department, to which she returned as a general laborer. On December 1, 2005, Kotwica had total hip replacement surgery. She took twelve weeks of leave as allowed by the Family and Medical Leave Act of 1993 ("FMLA"). Rose Packing originally expected Kotwica to return to work on February 25, 2006, without restrictions. In January 2006, during her leave, Kotwica worked at least forty hours for the Union as an interpreter and organizer. She wished to continue in this role, but the Union required that she return to work at Rose Packing to do so.

On February 1, 2006, Kotwica's surgeon, Dr. Mark Gonzalez, released her for work with restrictions: "Ms. Kotwica may return to work full-time as of 2/6/06. She is restricted from: heavy lifting, squatting, crawling, or climbing." Ex. C to Pl.'s L.R. 56.1 Stmt. After receiving this note, Madlener told Kotwica that she could not return with these restrictions. On February 21, 2006, Bill Tobiasz ("Tobiasz"), Rose Packing's Human Resources Manager, sent Kotwica a letter informing her that her FMLA leave, taking into account two additional days for Christmas and New Year's Day, would be exhausted on February 25, 2006, at which point she "must be ready to start . . . regular unrestricted work." Ex. E to Pl.'s L.R. 56.1 Stmt. Kotwica was also informed that she must receive clearance from Rose Packing's physician prior to that date pursuant to company policy and that if she was unable to return at that time, she must use her two weeks of unused vacation. On February 23, 2006, Madlener sent a letter to Dr. Gonzalez asking him to clarify Kotwica's work restrictions. In the letter, she described Kotwica's job

4

duties:

> Teresa's job would not involve squatting or crawling however with regards to climbing, there is some use of 'step-stools' at times with height variations of 1 & ½ inches up to 9 inches. . . .
>
> Teresa works for a pork processing plant as a laborer. . . . There is pushing and pulling boxes up to an average of about 25 pounds. Palletizing can also be involved; a box comes down the conveyor line, lift box, pivot, bend down, and start stacking boxes. Then there are times that a job involves only operating a knife.

Ex. F to Pl.'s L.R. 56.1 Stmt. Madlener further stated that "[t]he company **requires all employees returning to work to have a full and regular duty release without restrictions from their physician**" and inquired whether Kotwica's restrictions were permanent or temporary. *Id.* On March 11, 2006, after Kotwica had used her two weeks of vacation time for 2006, Dr. Gonzalez clarified Kotwica's restrictions, adding "Ms. Kotwica may use step stools. She may also lift, but no greater than 25 lbs. These restrictions are permanent." Ex. G to Pl.'s L.R. 56.1 Stmt. Following company policy, Kotwica met with a company doctor, Dr. Joseph Laluya, for a return to work physical evaluation on March 13, 2006. One component of the evaluation involved lifting fifty pounds. As Kotwica's restrictions specified she could not lift more than twenty-five pounds, Dr. Laluya noted the required physical ability test could not be completed and so did not clear Kotwica to return to work. On that same day, after the examination, Tobiasz informed Kotwica that her employment with Rose Packing was terminated because she had permanent restrictions in violation of company policy. In this meeting, Madlener emphasized to Kotwica that, with her word processing, general computer, and

language skills, she was likely to find employment elsewhere.[3]

Kotwica admits that she is not disabled and does not think of herself as disabled. In fact, she stated that she was pain-free at the time she was terminated and in much better physical condition than prior to her hip surgery. Since her employment with Rose Packing ended and collecting unemployment benefits for six months, Kotwica has held several jobs. In October 2006, Kotwica found work as a receptionist in a doctor's office, leaving in December 2006 to take a job with Dart Casting, a metal company, as a packer and quality inspector. This job involved bending, lifting (of up to fifteen pounds), and "a lot of moving around." Ex. 3 to Def.'s L.R. Stmt. at 34:22–23, hereinafter "Kotwica Dep." Kotwica testified that she did not have any problems performing these jobs. In February 2007, she left Dart Casting to work as an office

---

[3] Kotwica admits to this in her Response to Def.'s L.R. 56.1 Stmt. ¶ 43, even though her deposition testimony contradicts this statement. In her deposition, Kotwica testified:
> Q. Do you recall speaking with Ms. Madlener when she said she thought you had some skills for other jobs like being a translator?
> A. No, she never said that.
> . . .
> Q. So it's your testimony that when you were leaving the company, you never had any conversation with Ms. Madlener about other opportunities that were available to you?
> A. No.
> . . .
> Q. You don't recall Ms. Madlener talking to you about that there were other jobs out there, that you could work at Sam's Club or Wal-Mart?
> A. No, absolutely not.
> . . .
> Q. So if Al White, Carlos Carterena [a Union representative], Bill Tobiasz and Linda Madlener remember a conversation where Ms. Madlener said to you you can get a job at Sam's Club, or you can get a job with Wal-Mart, you're good with computers, you've got this translating thing going, none of them are telling the truth?
> A. Probably not because I don't remember.
> Q. You don't remember, or it didn't happen?
> A. I don't remember. I don't recall.
> Q. So you could have had a conversation like that, you just don't recall?
> A. I don't recall.

Kotwica Dep. 141:6–143:15. Because Kotwica agreed to the conversation having taken place in her response to Rose Packing's 56.1 Statement of Undisputed Material Facts, however, the court will proceed on the assumption that the conversation did indeed take place.

assistant for a State Farm insurance agent, where she worked until July 2007. She has not held a job since.

Kotwica filed a charge of discrimination on the basis of disability with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2006. The EEOC issued a right to sue notification on August 23, 2007, and Kotwica filed this suit within 90 days of receipt.

## DISCUSSION

To establish a prima facie case for failure to accommodate under the ADA, Kotwica first must demonstrate that (1) she is "a qualified individual with a disability," (2) Rose Packing knew of her disability, and (3) Rose Packing failed to reasonably accommodate her. 42 U.S.C. § 12112(a)–(b); *Sieberns* v. *Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "A plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether he is disabled, [and] whether he can perform the essential functions of the position." *Kupstas* v. *City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The EEOC has interpreted "substantially limits" to mean

> (I) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an

> individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2009).[4] A plaintiff claiming to be substantially limited in the major life activity of working must demonstrate that she is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Kupstas*, 398 F.3d at 612 (quoting 29 C.F.R. §1630.2(j)(3)(I)). "The injury must limit employment generally, not merely preclude an employee from a particular job or a narrow range of jobs." *Delgado* v. *Certified Grocers Midwest, Inc.*, 282 Fed. Appx. 457, 460 (7th Cir. 2008). An employer's belief that the employee could not perform a particular job is not enough to demonstrate that the employee was substantially limited in working. *Kupstas*, 398 F.3d at 613.

Kotwica admits that, at the time of her discharge, she did not have "a physical or mental impairment that substantially limit[ed]" her ability to work. Ex. B to Pl.'s L.R. 56.1 Stmt. ¶ 11 ("I was pain-free at the time I was terminated and have continued to be pain-free. My hip replacement has not hindered me in any way and I was (and remain) in much better physical condition when I attempted to return to work than I was prior to my surgery."); Kotwica Dep. 25:7–26:12 ("Q. So [your hip replacement] hasn't hindered you from working, and it hasn't hindered you in any way from walking? / A. No. / Q. And [in] no way whatsoever with anything else? / A. No."); *id.* at 60:14–22 ("Q. [Your injury and surgery] didn't limit you in any way in March of '06 and hasn't limited you in any way since then? / A. No."); *id.* at 155:16–157:6 ("Q.

---

[4] The EEOC regulations are "not binding on this court, [but] such administrative interpretations 'do constitute a body of experience and informed judgment to which courts and litigants may properly resort to guidance.'" *O'Neal* v. *City of New Albany*, 293 F.3d 998, 1009 (7th Cir. 2002) (quoting *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

So there were numerous jobs that you were qualified for that you could do that you weren't hindered whatsoever by your hip replacement? / A. Yes."). In fact, Kotwica has stated on the record that she is not disabled. Kotwica Dep. 163:23–164:2 ("Actually, I'm not disabled. I don't like to think of myself as a disabled person. I'm not disabled.).

Similarly, Kotwica cannot establish that she had a record of an impairment that substantially limited her ability to work.[5] Having a record of an impairment, according to the EEOC, means that one "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see Davidson* v. *Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998). A diagnosis is not enough. *Davidson*, 133 F.3d at 510 n.7 ("What § 12102(2)(B) requires is not simply a diagnosis, but a record reflecting the kind of impairment that would impose a substantial limitation on one or more of the plaintiff's major life activities."); *see also Rooney* v. *Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005). Although it is true that Kotwica had hip problems prior to surgery, as evidenced by doctors' notes, requests for leave, and Madlener's records, Kotwica has not presented any records that her hip problems substantially limited her ability to work. Prior to surgery, Kotwica worked through her hip pain without accommodations. While not cleared for full-time work after her hip replacement until February 6, 2006, Kotwica spent at least forty hours working for the Union as an interpreter during her convalescence. This demonstrates that she was not substantially limited in her ability to work during this time. After her surgery, Kotwica was actually in better condition than before having

---

[5] Although Kotwica focuses on the "regarded as" theory, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 6–7, she claims to have a record of impairment, however, because she could not work from the time of her surgery until she was cleared by her doctor to return to work in February 2006 in her Reply. *See* Pl.'s Reply at 2–3.

9

surgery and her subsequent work history indicates that she was not substantially limited in working. Consequently, Kotwica cannot demonstrate that she has a record of a disability.

Kotwica argues that Rose Packing regarded her as disabled. To be considered disabled under the "regarded as" prong, Kotwica must show that (1) Rose Packing mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or (2) Rose Packing mistakenly believed that an actual, nonlimiting impairment substantially limited one or more major life activities. *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999); *Mack* v. *Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002). An employer's knowledge of an impairment is not enough to establish that the employer regarded the employee as disabled. *Amadio* v. *Ford Motor Co.*, 238 F.3d 919 (7th Cir. 2001). "[I]f the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack*, 308 F.3d at 782.

It is undisputed that Rose Packing was aware of Kotwica's hip replacement and attendant restrictions. Kotwica, however, has not presented any evidence that Rose Packing believed her to be substantially limited in the major life activity of working as a result. At most, Kotwica has established that Rose Packing believed she was unable to work in a particular job, that of a general laborer in its factory. Kotwica's burden, however, is to establish that Rose Packing found her to be unable to work a broad class of jobs. *See Delgado*, 282 Fed. Appx. at 460–62 ("[T]he evidence in the record shows only that [defendant] fired [plaintiff] because he could no longer perform his specific job as a warehouse picker. It is unclear how the circumstance of [plaintiff's] termination, in itself, could be evidence that [defendant] regarded him as unable to

work in a broad class of jobs."); *Kupstas*, 398 F.3d at 612–13 (plaintiff's "regarded as" claim failed because defendant only believed that plaintiff could not rake or shovel for more than 2 hours continuously or 4 hours in a day and could lift no more than fifty-five to sixty pounds, which were requirements of plaintiff's particular job, and not that plaintiff could not work in a broad class of jobs).

It is clear that Rose Packing did not believe Kotwica to be capable of working as a general laborer in its factory. A general laborer at Rose Packing was required, per the collective bargaining agreement, to be able to rotate through all laborer positions. Some of these positions involved activities Kotwica would not have been able to perform with her restrictions, particularly that regarding lifting. Kotwica herself admitted that she could not perform all of the jobs a general laborer was expected to rotate through with her restrictions:

> Q. [I]f you're a regular laborer in the packing room, you're required to lift things that are more than 25 pounds, right?
>
> A. Yes.
>
> . . .
>
> Q. So for you with your restrictions, someone else would have to be lifting all the stuff that's more than 25 pounds?
>
> A. I'd rather ask someone to help me and do it together than put something on somebody else.
>
> Q. You couldn't do the job. Someone would have to come because in the packing room you had to lift products more than 25 pounds. You couldn't do that with your restrictions, so someone else would have had to do your job; right?
>
> A. Yes.

Kotwica Dep. 75:15–18, 76:3–13.[6] Tobiasz noted that Kotwica "already would have been disqualified from any of the plant's laborer jobs because of the weight restriction and the rotation thing." Ex. 5 to Def.'s L.R. Stmt. at 14:17–20, hereinafter "Tobiasz Dep." Although Kotwica maintains that she generally was not required to lift more than twenty-five pounds because men would do that, *see, e.g.*, Kotwica Dep. 75:4–8, this was not company policy. Tobiasz Dep. 13:20–14:2 ("Q. The 40-pound boxes . . . aren't they generally handled by the men? / A. Not necessarily but probably more often than not. Generally the unwritten rule is we don't ask the women to lift boxes heavier than the 40 pound masters, there are 80-pound masters, and hand boxes which are always lifted by the men."). In fact, Rose Packing required all its general laborers to be able to lift at least fifty pounds at the time of Kotwica's discharge, something Kotwica was not able to do because of her physician's restrictions. Ex. 6 to Def.'s L.R. 56.1 Stmt. at 13:3–14:3 ("[T]here was a certain weight limit that all employees were required to be able to lift. . . . At one time it was 50 pounds. . . . I want to think it was in 2006 [that] it was brought down to 30 pounds.").[7]

While Rose Packing regarded Kotwica as unable to perform the job of a general laborer

---

[6] The fact that Kotwica maintains that she could have performed all the jobs she had previously held, Ex. B to Pl.'s L.R. 56.1 Stmt.; Kotwica Dep. 58:7–9, does not contradict her testimony that there were certain positions a general laborer was expected to rotate through that required lifting over twenty-five pounds. Rose Packing could require its general laborers to have certain physical qualifications. *See Sutton*, 527 U.S. at 490–91 ("By its terms, the ADA allows employers to prefer some attributes over others and to establish physical criteria. . . . [An employer] is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job."). Similarly, the ADA specifically allows employers to require medical examinations that are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Thus, Rose Packing's position on not allowing Kotwica to return to work without passing the physical examination and with her weight restriction does not establish that Rose Packing regarded her as disabled.

[7] Whether the change from fifty to thirty pounds occurred before or after Kotwica's termination is immaterial, as either amount is more than her restrictions allowed her to lift.

in its factory, Kotwica has not established that Rose Packing believed her to be unable to work a broad range of jobs. To the contrary, she admitted that "Madlener emphasized that Kotwica's medical restrictions merely precluded her from working as a general laborer" and that "Madlener reminded Kotwica that with her other skill sets – including computer/word processing and fluency in Polish and English – it was very likely that Kotwica would successfully obtain employment after leaving Rose Packing." Def.'s L.R. 56.1 Stmt. ¶ 43. Tobiasz did not rule out that Kotwica may have been qualified to perform other jobs besides that of a general laborer at Rose Packing, instead only noting that none were available at the time. *See* Tobiasz Dep. 14:9–15:5 ("[I]t would have involved moving somebody out of a job. . . . So the other issues would be we do have people that do scheduling jobs in offices out within the plant that never wind up having to lift anything heavier than a pad of paper or whatever but those are all people that are on jobs that are paying a premium and you – the only way we would be taking anybody out of there is if they weren't performing or got promoted to a higher level, and that wasn't the case."); *id.* at 18:20–19:1 ("Q. [D]o you know when Miss Kotwica had this conversation with you . . . if there were any open positions that you could have put her in with her restrictions? / A. Not without displacing somebody.").

Kotwica has not come forth with any evidence that indicates that Rose Packing believed her to be restricted from working a broad range of jobs or even as a laborer in a factory that did not require its laborers to be able to lift more than twenty-five pounds as a prerequisite to holding the job. Instead, the record shows only that Rose Packing believed her to be unable to perform a particular job, that of a general laborer in its factory. As a matter of law, this is insufficient to establish that Rose Packing regarded Kotwica as substantially limited in the major

13

life activity of working. *See Sutton*, 527 U.S. at 491–92; *Kupstas*, 398 F.3d at 614 ("[Plaintiff's] failure to provide evidence as to a class or range of jobs for which he otherwise was qualified, and from which [defendant] perceived him to be excluded, is fatal to his case."). Since Kotwica cannot establish that she is a "qualified individual with a disability," she is not protected by the ADA's anti-discrimination provisions. *See Squibb* v. *Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). Consequently, summary judgment will be granted in Rose Packing's favor.[8]

## CONCLUSION

For the foregoing reasons, Kotwica's motion for summary judgment [#27] is denied and Rose Packing's motion for summary judgment [#21] is granted. The clerk is instructed to enter summary judgment in favor of the defendant. This case is terminated.

Dated: Sept. 25, 2009          Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

---

[8] Because this court finds summary judgment appropriate on the complaint in favor of Rose Packing, Rose Packing's alternative request for summary judgment on Kotwica's claims for compensatory and punitive damages need not be addressed.

14